STATE OF WEST VIRGINIA

*v.*

DENZIL RAY FENDER

(No. 14100)

Decided July 15, 1980.

---

*John W. Bennett* for Fender.

*Chauncey H. Browning*, Attorney General, *Ann V. Dornblazer*, Assistant Attorney General, for State.

PER CURIAM:

In this appeal, Denzil Ray Fender, who was convicted of breaking and entering in the Circuit Court of Logan County, contends that more than three terms of the circuit court passed between the return of the indictment against him and his trial, and that under the "Three Term Rule," *W.Va. Code* 62-3-21 [1959], he should have been discharged from prosecution. We disagree.

During the May 1971 Term of the Circuit Court of Logan County, the appellant was indicted for breaking and entering. During the same term a capias was issued for his arrest, and he was apprehended and then released pending trial on a $1,500 bond which was in customary form and required him to be amenable to further appearances in the court. By order entered July 6, 1971, the case was continued on the appellant's motion, to the September Term of the Circuit Court. At that time he

was allowed to remain on his original bond until September 24, 1971.

On August 23, 1971, a Federal court committed the appellant to the National Reformatory in Petersburg, Virginia, for violating the National Firearms Act. Later he was transferred to the Federal Youth Center in Ashland, Kentucky. Because he was in Federal custody the appellant failed to appear in the Circuit Court during the September 1971 Term according to the terms of his continuance and bond.

Thereafter, at the January 1972 Term of Court the State filed two writs of habeas corpus ad prosequendum to procure his return to West Virginia so that he could be tried on the breaking and entering indictment. The record does not disclose what transpired after the filing of the first writ of habeas corpus. The second writ was filed April 6, 1972, still within the January 1972 Term. It apparently resulted in the appellant's writing to his counsel by a letter dated April 11, 1972, where he stated:

> "I am very happy and well pleased to hear you have discussed my case with the honorable Judge, and that he is willing to continue my case until I am released from Federal confinement. My present release date is October 1, 1972. It is my wish and desire to continue my case until this or a later date, in order and so that we will have sufficient and proper time to prepare my case."

Subsequently, on May 23, 1972, his counsel filed a written motion for continuance in which he requested the case be continued. In the affidavit attached to the motion counsel stated that if the defendant were returned for trial upon the writ of habeas corpus ad prosequendum he could not be confined in the county jail because it was not an approved facility for Federal prisoners. He would be confined in Cabell County which would make it difficult to communicate with him. Further, he attached appellant's letter and pointed out that the appellant

would be released in the fall. As a consequence of this motion nothing further was done to procure the appellant's return to the State.[1]

On September 13, 1972, the appellant was released from the Federal Youth Center. Upon his release he returned to Logan County but failed to present himself to the Circuit Court. For the next two and one-half years he remained at large, and the State was not aware of his whereabouts. On May 9, 1975, the appellant was arrested on a misdemeanor charge, and at that time the State reactivated the breaking and entering proceedings.

When it became apparent that the State intended to prosecute him on the felony, the appellant filed a Plea in Bar asserting that he was discharged from prosecution by the terms of the "Three Term Rule", *W.Va. Code* 62-3-21 [1959].[2] After conducting a hearing on the matter, the Circuit Court, by order entered August 28, 1975, overruled the plea.

We have recognized that *W.Va. Code* 62-3-21 [1959] imposes a duty on the State to exercise reasonable diligence to procure temporary custody of an out-of-state accused for the purpose of offering him a speedy trial

---

[1] The appellant now argues that since no order was entered in May 1972 formally granting the continuance motion, it was error for the court to enter a *nunc pro tunc* order showing the continuance in January 1976 after he was arrested. The motion for continuance and the other documents relating to it do constitute sufficient memoranda to support the entry of the *nunc pro tunc order* by the court. *McCoy v. Fisher*, 136 W.Va. 447, 67 S.E.2d 543 (1951).

[2] *W.Va. Code* 62-3-21 [1959] provides in part:

"Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused * * * by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance * * *."

once his out-of-state whereabouts become known. The failure of the State so to act will cause the terms during which the accused was in out-of-state custody to be chargeable against the State under the "Three Term Rule." *State ex rel. Boso v. Warmuth*, 270 S.E.2d 631 (W.Va., 1980); *State ex rel. Stines v. Locke*, 159 W.Va. 292, 220 S.E.2d 443 (1975).

There are three methods by which the State may attempt to secure the presence of a defendant who is incarcerated out of state. One method is provided by *W.Va. Code* 62-14-1 [1971] *et seq.*, the "Agreement on Detainers". Article IV of that agreement provides a mechanism whereby a West Virginia prosecutor, who has lodged a detainer against an accused confined in a foreign state subscribing to the "Agreement," may procure temporary custody of him for the purpose of affording him a trial. Where the State has obtained custody of an accused through the procedure established by the "Agreement on Detainers," trial must be commenced within one hundred twenty days after the prisoner returns to the State, unless a continuance is granted for good cause shown in open court with the accused or his attorney present in court. *Moore v. Whyte*, ____ W.Va. ____, 266 S.E.2d 137 (1980); *W.Va. Code* 62-14-1 [1971]; *See,* Yackle, *Taking Stock of Detainer Statutes*, Loy. L.A.L. Rev. 88 (1975).

Prior to the enactment of the "Agreement on Detainers" the State had available the common law writ of habeas corpus ad prosequendum for obtaining for trial the temporary custody of an out-of-state accused. Traditionally that writ has been issued by a court in the state seeking custody of the defendant. It has been directed to the person having custody of him in the foreign sovereignty. Although by the writ the seeking state cannot compel the jurisdiction having custody to return the accused for trial,[3] custodian jurisdictions commonly, on

---

[3] This is true notwithstanding *U.S. Const.* art. IV, § 2, for in *Kentucky v. Dennison*, 65 U.S. (24 How.) 66 (1860, the Supreme Court of the United States held that Congress had no power to

the basis of comity, have recognized and honored the requests. *See, In re Habeas Corpus of Yoder*, ____ Okla. ____, 298 P.2d 1083 (1956); *Commonwealth v. Tees*, 179 Pa. 605, 118 A.2d 585 (1955).

The federal government has been among jurisdictions honoring writs of habeas corpus ad prosequendum from the states. In sanctioning the procedure Chief Justice Taft in *Ponzi v. Fessenden*, 258 U.S. 254, 261, 42 S.Ct. 309, 66 L.Ed.2d 607 (1922), said:

> "There is no express authority authorizing the transfer of a federal prisoner to a state court for such purposes [trial on a state charge]. Yet we have no doubt that it exists and is to be exercised with the consent of the attorney general. In that officer, the power and discretion to practice the comity in such matters between the federal and state courts, is vested."

We do not believe that in enacting the "Agreement on Detainers" our Legislature abolished or amended the right of the State to seek the temporary custody of an out-of-state accused through a writ of habeas corpus ad prosequendum. It would appear that it established an alternative device which, because it was uniform in other subscribing jurisdictions, regularized the return procedure.

In Syllabus Point 2 of *Moore v. Whyte, supra*, we stated that: "A writ of habeas corpus *ad prosequendum* is a 'written request for temporary custody' under the Agreement of Detainers." In that case we held that we would treat a writ of habeas corpus ad prosequendum filed subsequent to the filing of a detainer as meeting the language of *W.Va. Code* 62-14-1 [1971] requiring a "written request for temporary custody" in addition to

---

compel the governor of a state to perform his moral duty under the Constitution. The Court declined to enforce either the constitutional provision or the implementing statute, leaving state executives de facto discretion to refuse delivery of a prisoner in appropriate circumstances.

the detainer. This ruling was in accordance with a similar holding in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), where the United States Supreme Court construed the same provision of the "Agreement on Detainers". *Moore* was not intended to abolish the habeas corpus ad prosequendum proceeding. It only concluded that if a detainer had been filed the writ should act as a request for temporary custody. As previously noted, the writ performs this function independently at common law.

*W.Va. Code* 5-1-7 [1937], the State extradition law, establishes a third means whereby State authorities may obtain custody of an out-of-state accused for the purpose of affording him a trial.

In *State ex rel. Boso v. Warmuth, supra,* and in *State ex rel. Stines v. Locke, supra,* we mandated that the State move with reasonable diligence to procure the return for trial of an incarcerated out-of-state accused where his whereabouts were known and where a mechanism existed to procure his return. The gist of our requirement was that the State move with reasonable diligence to activate a recognized return mechanism. Otherwise, the terms of out-of-state confinement are chargeable against the State under the "Three Term Rule." We did not mandate in *Boso* or *Stines* the use of the "Agreement on Detainers" or any other specific mechanism. We merely held that the State make a reasonable diligent effort to procure the return. *Boso* established that if the defendant fights the State's attempt to return him for trial he may not claim that the State has failed to act with reasonable diligence.

In the present case the defendant was indicted in the May 1971 Term and the first writ of habeas corpus was issued by the State in the January 1972 Term. In computing the three-term rule we do not count the term at which the indictment is returned. *State ex rel. Smith v. DeBerry,* 146 W.Va. 534, 120 S.E.2d 504 (1961).

The next term was the September 1971 Term and the record does not reveal whether the State was aware of the defendant's out-of-state incarceration in the federal institution. If it was not aware its duty to exercise reasonable diligence to seek his return would not begin. Because of the ultimate result of our opinion the September 1971 Term is not critical to the three-term count.

We have shown that the State's efforts to seek his return started at the January 1972 Term so that this term cannot be counted against the State. It was at the May 1972 Term that the defendant's attorney sought and obtained a continuance; therefore, this term is not counted against the State under Syllabus Point 2 of *State ex rel. Spadafore v. Fox*, 155 W.Va. 674, 186 S.E.2d 833 (1972), where we said that:

> "Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of *Code*, 62-3-21, as amended."

It was the next term—the September 1972 Term—that the appellant was released from federal custody and returned to Logan County but failed to make any appearance according to his recognizance bond. Consequently the appellant cannot claim the September 1972 Term nor any subsequent term until May 1975 when he was finally arrested because he was free from confinement and failed to appear according to his recognizance. The Three-Term Statute is clear that this failure tolls such terms:

> "Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him,

without a trial, unless the failure to try him was caused * * * by reason of his escaping from jail, or failing to appear according to his recognizance, * * * ."

The judgment of the Circuit Court of Logan County is, therefore, affirmed.

*Affirmed.*