342 S.E.2d 111

**Dorothy GOOD**

v.

**Hon. Joseph H. HANDLAN, Judge, etc.**

**No. 16968.**

Supreme Court of Appeals
of West Virginia.

April 3, 1986.

William E. Watson, William E. Watson & Assoc., Wellsburg, G. Charles Hughes, Moundsville, for appellant.

Charlie Brown, Atty. Gen., Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Chief Justice:

In this original prohibition action, the relator, Dorothy Good, seeks to prohibit the Circuit Court of Pleasants County from trying her on a second degree murder indictment because of the delay in bringing her to trial.[1] Her main contentions are that this delay violated the one-term rule under W.Va.Code, 62–3–1, and the three-term rule under W.Va.Code, 62–3–21, requiring the dismissal with prejudice of the indictment. We conclude the relator is not entitled to the writ of prohibition.

The relator was indicted in the January 1984 term of the Circuit Court of Pleasants County. Under W.Va.Code, 51–2–1c, the three regular annual terms of this circuit court commence on the second Monday in January, May, and September. The relator moved for and was granted continuances in the January and the May 1984 terms.

In the September 1984 term, the relator, by counsel, requested that the case be set for trial at some time during that term. The State, pursuant to W.Va.Code, 27–6A–

---

1. The indictment is not included in the record. Counsel for the relator in their petition state that the indictment alleged the offense of "mur-

1(a),[2] moved to have the relator examined by a psychiatrist and a psychologist for a determination of her competency to stand trial and her criminal responsibility at the time of the murder. The State based its motion on the facts surrounding the crime and on information from the relator that she had previously been hospitalized for mental problems. The trial court granted the motion for the mental examinations.

The medical reports filed by the psychiatrist and the psychologist who had examined the relator were presented to the trial court in October, 1984. In these reports, both doctors found the relator to be competent to stand trial, but raised questions concerning her criminal responsibility at the time of the murder. At the October 31, 1984 hearing, the relator repeated her desire to have the trial set during that term.

After examining the two medical reports, the trial court was not satisfied that it had sufficient information on the question of the relator's competency to stand trial or on her criminal responsibility at the time of the murder. In a letter sent to the parties dated December 3, 1984, the trial court stated that the relator should be examined again to provide further information on her mental competency and criminal responsibility. At the December 17, 1984 hearing, the relator voiced no objection to this additional mental examination.

In the January 1985 term, the relator was required to retain different counsel because her original attorney withdrew from the case. Furthermore, a special prosecutor had to be appointed because of the newly elected prosecutor's previous representation of the relator in this case.

Finally, a special judge had to be appointed to the case after the death of the original trial judge in January, 1985. During this term of court, the relator did not repeat her request that the case be set for trial. In March, 1985, medical reports were filed by the second psychiatrist and psychologist who had examined the relator. These reports essentially corroborated the conclusions made in the first two medical reports.

At a hearing held on June 18, 1985, the State and the relator jointly moved to have a presentence investigation report prepared on the relator to aid them in a possible plea bargain agreement. This report was to have been presented to the parties by July 18, 1985. The State and the relator jointly moved to have the case continued generally to be reset by the trial court after the presentence report was filed and in the hands of the parties. No further proceedings took place in this term.

The next hearing was not held until October 29, 1985, in the September 1985 term, when it was determined that the probation officer who had prepared the presentence report had failed to give copies of it to the parties. The trial court ordered that the report should be given to the parties promptly and set a trial date of December 17, 1985. The relator's petition for a writ of prohibition was filed on December 2, 1985.

## I.

■ As earlier noted, the relator's main arguments are that her right to a speedy trial under the one-term rule, W.Va.Code, 62–3–1,[3] and the three-term rule, W.Va.

der in the second degree" and the State in its response admits this fact.

**2.** W.Va.Code, 27–6A–1(a), states, in pertinent part:

"Whenever a court of record, or in the instance of a defendant charged with public intoxication a magistrate or other judicial officer, believes that a defendant in a felony case or a defendant in a misdemeanor case in which an indictment has been returned, or a warrant or summons issued, may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist...."

**3.** W.Va.Code, 62–3–1, provides in relevant part: "When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term."

Code, 62–3–21,[4] were violated. In applying these two rules, we have noted there are several distinctions between these two statutes. We recognized in Syllabus Point 1 of *State ex rel. Shorter v. Hey,* 170 W.Va. 249, 294 S.E.2d 51 (1981), that it is the three-term rule, W.Va.Code, 62–3–21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution:

"Whereas *W.Va.Code,* 62–3–1, provides a defendant with a statutory right to a trial in the term of his indictment, it is *W.Va.Code,* 62–3–21, rather than *W.Va.Code,* 62–3–1, which is the legislative adoption or declaration of what ordinarily constitutes a speedy trial within the meaning of *U.S. Const.,* amend. VI and *W.Va.Const.,* art. III, § 14. *State ex rel. Smith v. DeBerry,* 146 W.Va. 534, 538, 120 S.E.2d 504, 506 (1961) [*overruled on other grounds, State ex rel. Sutton v. Keadle,* 176 W.Va. 138, 342 S.E.2d 103 (1985) ]."

*See also State ex rel. Sutton v. Keadle, supra; State v. Young,* 167 W.Va. 312, 280 S.E.2d 104 (1981); *State v. Underwood,* 130 W.Va. 166, 43 S.E.2d 61 (1947).

While we alluded to the speedy trial right under the Sixth Amendment to the United States Constitution in Syllabus Point 1 of *Shorter,* it is clear that our three-term rule is not the federal constitutional speedy trial standard, which was established by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[5]

■ Another distinction between the two rules has to do with the burden of proof.

Under the one-term rule, we held in Syllabus Point 2 of *Pitsenbarger v. Nuzum,* 172 W.Va. 27, 303 S.E.2d 255 (1983):

"Under *W.Va.Code,* 62–3–1 [1959], which provides a personal right to criminal defendants to be tried more expeditiously than the Constitution requires, the burden is on the party seeking this statutory protection to show that the trial was continued without good cause."

As a corollary to this rule, we have indicated in our decisions that an accused must request a prompt trial in order to take advantage of the one-term rule. *See, e.g., Pitsenbarger v. Nuzum,* 172 W.Va. at 29, 303 S.E.2d at 257; *State ex rel. Shorter v. Hey,* 170 W.Va. at 257–258, 294 S.E.2d at 60 (Neely, J., concurring); *State ex rel. Workman v. Fury,* 168 W.Va. 218, 220–221, 283 S.E.2d 851, 853 (1981).

■ Under the three-term rule, we have held that it is the duty of the State to provide a trial without unreasonable delay and an accused is not required to demand a prompt trial as a prerequisite to invoking the benefit of this rule. *See, e.g., State ex rel. Rogers v. Casey,* 166 W.Va. 179, 273 S.E.2d 356 (1980) (per curiam); *State v. Lacy,* 160 W.Va. 96, 232 S.E.2d 519 (1977); *State ex rel. Farley v. Kramer,* 153 W.Va. 159, 169 S.E.2d 106, *cert. denied,* 396 U.S. 986, 90 S.Ct. 482, 24 L.Ed.2d 451 (1969); *Ex parte Chalfant,* 81 W.Va. 93, 93 S.E. 1032 (1917).

■ The possible reasons justifying good cause for a continuance under W.Va.Code, 62–3–1, are broader than the causes listed in W.Va.Code, 62–3–21, as valid reasons for not counting a particular term. As a con-

---

**4.** W.Va.Code, 62–3–21, provides in relevant part:

"Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the ac-

cused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict...."

**5.** In *Barker,* the United States Supreme Court refused to adopt a fixed time period and set a balancing test composed of four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. (Footnote omitted). *See* Syllabus Point 2, *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982).

sequence, the causes justifying continuances listed in the three-term rule, W.Va.Code, 62–3–21, may be applied in a one-term rule situation, but the general good cause standard in W.Va.Code, 62–3–1, may not be applied in a W.Va.Code, 62–3–21, situation. We recognized that the grounds for a continuance under W.Va.Code, 62–3–1, are much broader in Syllabus Point 2 of *Shorter:*

"The determination of what is good cause, pursuant to *W.Va.Code,* 62–3–1, for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may, pursuant to *W.Va.Code,* 62–3–1, grant a continuance of a trial beyond the term of indictment at the request of either the prosecutor or defense, or upon the court's own motion."

*See also Pitsenbarger v. Nuzum, supra; State v. Ward,* 168 W.Va. 385, 284 S.E.2d 881 (1981) (per curiam).

Finally, there is more flexibility in the remedy for a one-term rule violation than for a three-term rule violation. W.Va. Code, 62–3–1, does not specifically provide a remedy for a violation of the one-term rule. In Syllabus Point 4 of *Shorter,* we stated what had to be proven in order for a violation of W.Va.Code, 62–3–1, to justify a dismissal of an indictment:

"Where the trial court is of the opinion that the state has deliberately or oppressively sought to delay a trial beyond the term of indictment and such delay has resulted in substantial prejudice to the accused, the trial court may, pursuant to *W.Va.Code,* 62–3–1, finding that no good cause was shown to continue the trial, dismiss the indictment with prejudice, and in so doing the trial court should exercise extreme caution and should dismiss an indictment pursuant to *W.Va. Code,* 62–3–1, only in furtherance of the prompt administration of justice."

Where a violation of the three-term rule is established, a trial court is obligated to dismiss the indictment under W.Va.Code, 62–3–21, as it provides that an accused in such situation "shall be forever discharged from prosecution for the offense."

## II.

■ In applying the one-term rule, the State argues that because the relator obtained continuances in the January and May 1984 terms, she waived her right to a prompt trial under the one-term rule. The State relies on the language in W.Va.Code, 62–3–1, which states that "[w]hen an indictment is found ... the accused ... shall, unless good cause be shown for a continuance, be tried at the same term."[6] The State's position is that the phrase "the same term" must refer to the term at which the indictment is returned. Under the State's theory, once a defendant allows this term to lapse without demanding a prompt trial, then the one-term rule has no application.

The relator cites *State ex rel. Workman v. Fury,* 168 W.Va. 218, 283 S.E.2d 851 (1981), where the defendant was indicted in the November 1980 term of the Circuit Court of Lewis County and obtained a continuance to March, 1981. He was tried during the March term and a mistrial resulted from a hung jury. Thereafter, on April 6, 1981, he requested that the case be retried without delay. The trial court instead of scheduling another trial in either the March or June terms, set the trial in the November term. We held that the trial court's action had violated the defendant's rights under W.Va.Code, 62–3–1.[7]

Admittedly, in *Workman* the issue was not raised or discussed as to whether the one-term rule was limited to the term at which the indictment is returned. This same absence of discussion is also present in *Pitsenbarger,* where the defendant sought to invoke his rights under W.Va. Code, 62–3–1, at a term subsequent to the

---

6. For the full text of the relevant portion of W.Va.Code, 62–3–1, see note 3, *supra.*

7. The single Syllabus in *Workman* states: "A failure as a matter of common practice to conduct jury trials during a term of court is not good cause to continue a criminal case after a motion has been made by the defendant for a speedy trial."

term of his indictment. We found that he had filed no request for a speedy trial at the term following his indictment. *See also State v. Ward, supra.*

These cases do suggest that a defendant can assert his right to a prompt trial under W.Va.Code, 62-3-1, after the term in which the indictment is returned provided that he makes a timely motion for the same.[8] We, therefore, conclude W.Va.Code, 62-3-1, is not limited to the term of court at which an indictment is returned, but is applicable to any term of court in which an accused asserts his right to a prompt trial. Where such right is asserted, the accused must be tried during that term unless good cause can be shown for a continuance.

We believe there are several valid policy reasons for this rule. To confine W.Va. Code, 62-3-1, to the term in which the indictment is returned would virtually negate the right because of the liberal good cause for continuance policy that we have adopted under this statute. If there were no mechanism for a defendant to demand a prompt trial after the term of the indictment, then his only recourse would be to wait until the end of the period allowed by the three-term rule, which marks the outside limit of a defendant's right to a speedy trial in this State.

However, we have recognized under W.Va.Code, 62-3-21, that the term of the indictment is not counted,[9] so that it is possible for almost four full terms of court to pass before the State would be required to bring a defendant to trial. With most courts having only three regular terms of court a year,[10] this would mean that a defendant could be held in jail over a year before he had to be tried. If one of the events that tolls the running of W.Va.Code, 62-3-21, occurs, the delay could be even longer.

Finally, this policy is consistent with a host of considerations that surround the right to a speedy trial, as articulated in *Barker v. Wingo,* 407 U.S. at 519-20, 92 S.Ct. at 2186-87, 33 L.Ed.2d at 110-11:

"The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes.... Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation." (Footnotes omitted).

The only term during which the relator asserted the right to a prompt trial under W.Va.Code, 62-3-1, was the September 1984 term. However, in that term, the State requested a mental examination of the relator. After examining the two reports, the trial court was not satisfied that it had enough information on the competency and criminal responsibility issues. As a consequence, the trial court advised the parties on December 3, 1984, that additional psychiatric examinations were needed.

8. It is clear that W.Va.Code, 62-3-1, is a statutory and not a constitutional right. In extending its operation beyond the term of the indictment, the requirement that it be exercised by the defendant giving notice that he asserts the right is consistent with cases elsewhere. *See generally,* 21A Am.Jur.2d *Criminal Law* § 665 (1981); 22A C.J.S. *Criminal Law* § 469 (1961); Annot., 57 A.L.R.2d 302 (1958).

9. *See State ex rel. Rogers v. Casey,* 166 W.Va. 179, 273 S.E.2d 356 (1980); *State v. Fender,* 165 W.Va. 440, 268 S.E.2d 120 (1980) (per curiam); *State v. Lacy,* 160 W.Va. 96, 232 S.E.2d 519 (1977); *State ex rel. Spadafore v. Fox,* 155 W.Va. 674, 186 S.E.2d 833 (1972).

10. *See* W.Va.Code, 51-2-1 through -1ee.

At the December 17, 1984 hearing before the trial court, no objection was made by relator's counsel to the additional examinations.

As we have earlier noted, good cause sufficient to continue a case under W.Va. Code, 62–3–1, is rather broad and is not confined to the exceptions in W.Va.Code, 62–3–21. Under this latter statute, one of the listed exceptions is "the failure to try him was caused by his insanity." Our cases construing this exception have indicated that where a defendant is returned to a circuit court as being competent to stand trial, that term of court is not counted under W.Va.Code, 62–3–21. *State v. Rhodes,* 166 W.Va. 402, 274 S.E.2d 920, 924 (1981); [11] *see also State ex rel. Parsons v. Cuppett,* 155 W.Va. 469, 473, 184 S.E.2d 616, 619 (1971).

In note 1 of *State ex rel. Boso v. Warmuth,* 165 W.Va. 247, 250, 270 S.E.2d 631, 633 (1980), which dealt with the more stringent exceptions of the three-term rule, we suggested: "*W.Va.Code,* 62–3–21 [1959] specifically provides that a term during which an accused is insane shall not be counted for the purpose of the 'Three Term Rule.' This provision is sufficiently broad to include any term during which a defendant's mental competency is being tested." Other courts have stated that the time spent evaluating a defendant's mental competency is not counted under their speedy trial statutes. *See generally, Berger v. Rozar,* 112 Ariz. 62, 537 P.2d 932 (1975) (en banc); *Scott v. State,* 268 Ark. 339, 691 S.W.2d 859 (1985) (per curiam); *State v. Harren,* 302 N.C. 142, 273 S.E.2d 694 (1981); *State v. Wilson,* 7 Ohio App.3d 219, 454 N.E.2d 1348 (1982); 22A C.J.S. *Criminal Law* § 472(2) (1961).

This law is not directly on point to the problem at hand which is whether the trial court's ordering of a second mental examination of the relator is sufficient good cause to avoid the provisions of W.Va. Code, 62–3–1. We believe that, under the particular facts of this case, it was. The

relator through counsel demanded the case be tried in the September 1984 term. However, at the hearing on December 17, 1984, where the necessity for a second mental examination was discussed, the relator's counsel not only did not object to such examination, but indicated that he was agreeable to such further examination. We believe that such acquiescence to a second examination constituted sufficient good cause for the trial court to continue the trial to the next term. There were no subsequent terms at which the relator demanded a prompt trial under W.Va.Code, 62–3–1. Therefore, we reject the relator's argument that her right to a speedy trial under W.Va.Code, 62–3–1, was violated.

### III.

■ The three-term rule argument posed by the relator is less difficult to decide. The term of the indictment, January 1984, and the second term, March 1984, are not counted because the relator moved for a continuance in each of these terms. Under W.Va.Code, 62–3–21, a term that is continued on motion of an accused is not included in counting the three terms. *See, e.g., State v. Fender,* 165 W.Va. 440, 268 S.E.2d 120 (1980) (per curiam); *State ex rel. Spadafore v. Fox,* 155 W.Va. 674, 186 S.E.2d 833 (1972); *State ex rel. Farley v. Kramer, supra.* Moreover, as we have earlier noted, the term at which the indictment is returned is not counted under the three-term statute, W.Va.Code, 62–3–21, according to our cases.

■ Even if we give the relator the benefit of the September 1984 and the January 1985 terms of court, the May 1985 term concluded with an agreed order dated June 18, 1985, stating "[u]pon joint motion of the parties, this matter is continued generally, to be reset by the Court after the aforesaid pre-sentence report is filed and in the hands of the parties." At the next hearing which was held in the September 1985 term on October 29, 1985, it was discovered that the presentence report had not been deliv-

---

11. In Syllabus Point 2 of *Rhodes,* we stated: "Where a defendant is unable to be tried in a particular term because of his incompetency to stand trial, such term should not be counted under our three-term statute, W.Va.Code, 62–3–21."

ered to the parties because the probation officer was apparently unaware that he was required to make the delivery. No objection was made by relator's counsel and the case was set for trial on December 17, 1985. It is this trial date upon which the relator's prohibition is sought.

Since the May 1985 term was continued by agreement of the parties, it cannot be counted and, consequently, the relator has failed to show three terms excluding the term of the indictment that are countable under W.Va.Code, 62–3–21.

### IV.

The relator raises several additional matters. First, the relator contends that several actions wre taken by the trial court in her absence or at least without a record of what was done. Reference is made to *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), which dealt with a defendant's constitutional right to be present at all critical stages of a criminal proceeding as summarized in Syllabus Point 6: "The defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless."

The relator refers to an order dated May 15, 1984, which set the case for trial on June 6, 1984. A subsequent order dated June 18, 1984, showing the relator's presence with counsel, continued the case to the next regular term of court on the relator's motion. The relator argues that something must have occurred on the June 6, 1984 trial date by way of a continuance when she was not present. If there were no order of June 18, 1984, showing the relator moved for a continuance without objecting to anything that might have occurred on June 6, 1984, we might be inclined to give more serious consideration to this issue. However, since the relator moved for and was granted a continuance on June 18, 1984, without referring to the June 6, 1984

trial date, we conclude there was no violation under *Boyd.*

The relator also argues that she was not present when the trial court actually made its appointment of the psychiatrist and psychologist who conducted the additional mental examinations of the relator. It is clear from the record that the relator was present with her counsel in court each time the trial court determined that a mental examination was needed. Furthermore, at the January 17, 1985 hearing, the relator's counsel and the prosecutor were given the opportunity to agree on whom the psychiatrist and psychologist would be, but they were unable to reach an agreement. Consequently, the fact that the trial court later selected a psychiatrist does not constitute a critical stage of the proceedings.

Another point raised by the relator is that by the trial court's failure to set the matter for trial in the September 1984 term, she lost her right to be represented by counsel of her choice. We are cited some cases that suggest where a criminal defendant has retained counsel, a court should not arbitrarily deny him the services of such counsel.[12] However, we decline to address this issue in any detail because the fact that the relator's original attorney had an associate who was elected prosecutor in Pleasants County and took office in January, 1985 would not have prevented this original attorney from continuing to handle the case. It would have precluded his associate from trying the case as prosecutor because previously he had appeared in the case on behalf of the relator. *See State v. Britton,* 157 W.Va. 711, 203 S.E.2d 462 (1974). The trial court's order of January 17, 1985, reflects the fact that the associate did withraw from the case and a special prosecutor was appointed.

The remaining arguments are that we should rule as a matter of law that the relator was not criminally responsible and that the trial court must bifurcate the trial to allow the relator to separate her insanity defense from her claim of defense of anoth-

---

12. *See United States v. Smith,* 653 F.2d 126 (4th Cir.1981); *Gandy v. Alabama,* 569 F.2d 1318 (5th Cir.1978); *cf., Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

er. The relator made two motions concerning these matters to the trial court below, which held a hearing on November 6, 1985. In an order filed after the relator had filed her petition for a writ of prohibition, the trial court denied both these motions.

In the Syllabus of *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811 (1981), we stated our rule on prohibiting a criminal trial based upon evidence in pretrial psychiatric reports that a defendant was not criminally responsible:

> "While a criminal trial is unwarranted when pretrial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts, *W.Va.Code,* 27–6A–1 [1977] *et seq.* provides no mandatory pretrial mechanism for resolving the issue of criminal responsibility; consequently, adjudication of criminal responsibility before trial is entirely within the combined discretion of the trial court judge and the prosecuting attorney, since absent a motion to *nolle* an indictment by the prosecuting attorney based on persuasive pretrial medical reports, the trial court judge has no discretion to deny the State a trial by jury on the issue of criminal responsibility."

Under this rule, the discretion as to whether a criminal trial should be held where there is a question concerning a defendant's criminal responsibility is left to the "combined discretion of the trial court judge and the prosecuting attorney." In the present case, the trial court only had the four reports from the psychiatrists and the psychologists who had examined the relator. These experts had not yet been questioned in a hearing before the trial court concerning their methodology and the reasons for their conclusions. Furthermore, the actual facts surrounding the murder had not yet been fully developed. Given this lack of development in the record, we conclude it would be inappropriate for this Court to rule as a matter of law that the relator was not criminally responsible at the time of the murder.

On the bifurcation issue, our general rule is stated in Syllabus Point 3 of *State v. Bragg,* 160 W.Va. 455, 235 S.E.2d 466 (1977): "The right to a bifurcated trial lies within the sound discretion of the trial court." We are unable to say based upon the record before us, that the trial court abused its discretion in denying the motion for a bifurcated trial.

For the foregoing reasons, the writ of prohibition sought by the relator is denied.

Writ Denied.