**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0678** (Fayette County 19-F-88)

**Matthew S. Dixon,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Matthew S. Dixon appeals the July 27, 2021, order of the Circuit Court of Fayette County resentencing petitioner for purposes of appeal to an effective term of nine to thirteen years of incarceration in the penitentiary following his conviction on four offenses.[1] Petitioner argues that his conviction should be reversed, raising issues with the legality of the stop of his vehicle by police, the continuance of his case into a second term of court, and statements made by the assistant prosecuting attorney during her closing argument. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

### I.  FACTS AND PROCEDURAL HISTORY

Petitioner was indicted in the January 2019 term of court in Fayette County for conduct occurring on July 6, 2018.[2] The indictment charged petitioner with one count of conspiracy (Count One), one count of possession of a controlled substance—heroin—with intent to deliver (Count Two), one count of possession of counterfeit currency with intent to utter (Count Three), and one count of driving with no operator's license (Count Four).

On February 8, 2019, petitioner filed a motion to suppress evidence. The motion asserted that on July 6, 2018, Fayette County Deputy Sheriff Christian Tomlin executed a traffic stop of a vehicle operated by petitioner because, according to the officer's narrative, he knew "from previous dealings with [petitioner] that [petitioner] d[id] not possess a WV driver's license." The

---

[1] Petitioner appears by counsel Jason T. Gain. Respondent State of West Virginia appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General R. Todd Goudy.

[2] The three terms per year of the Fayette County Circuit Court commence "on the second Tuesday in January, May, and September." W. Va. T.C.R. 2.12.

1

motion further asserted that the officer obtained petitioner's permission to search the vehicle and that, in his search, the officer found suspected heroin; suspected methamphetamine; a bag containing a white, powdery substance; a set of digital scales; and counterfeit currency. Petitioner argued that the fruits of the search should be suppressed on the ground that the stop was illegal because the officer lacked an articulable and reasonable suspicion to stop petitioner's vehicle.

Officer Tomlin was questioned about the stop during a suppression hearing on February 26, 2019. He averred that two or three weeks before he stopped petitioner's vehicle on July 6, 2018, he stopped another vehicle in which petitioner was a passenger. Officer Tomlin testified that, during the prior stop, he obtained petitioner's name and birth date, which he then "r[a]n through [] dispatch," learning that petitioner's license had been suspended and that petitioner had multiple unpaid citations. Officer Tomlin asserted that his sole basis for stopping petitioner on July 6, 2018, was "due to the amount of fines, unpaid citations that were on [petitioner's] driver's history." Upon hearing the officer's testimony and the argument of counsel, the circuit court denied the motion to suppress, concluding that the stop was valid and that the officer had "an articulable reason and suspicion that [petitioner] was committing a violation of the law by operating that vehicle without a license." The court found "that because of previous contact with [petitioner,] the officer was aware that his license to operate a motor vehicle in the State of West Virginia had been revoked or suspended, either for unpaid fines or costs or for some traffic violation, or whatever." The court memorialized its ruling in an order entered on March 1, 2019.

During the suppression hearing, the assistant prosecuting attorney advised the court that, due to an oversight, the suspected drugs seized from petitioner's vehicle were not sent to the West Virginia State Police Forensic Laboratory ("Crime Lab") for testing until February 2019. She informed the court that testing results would not be available by the March 2019 trial date but that she was "assured they [would] be done by the end of [that] term." She requested a continuance of the trial. The court found that the State's oversight was "inexcusable," but it permitted a continuance of the trial within the January 2019 term over petitioner's objection.

The court held another hearing on April 2, 2019, to address outstanding motions. During the hearing, the assistant prosecuting attorney informed the court that the Crime Lab's evaluation of the suspected drugs seized from petitioner's vehicle would be completed in early May and asked that the trial be "set as soon . . . in the next term as we can[.]" Petitioner objected to continuing the trial into the next term of court. The circuit court decided to continue the trial until the next term of court because defense "counsel was just recently appointed; I think counsel has you have [sic] an opportunity to get familiar with this case[.[3] . . . In addition, the lab results are not in hand. The defendant is entitled to have those lab results in hand before this matter proceeds to trial." The court memorialized its decision and findings in an order entered on April 8, 2019. The order included the additional finding that the Crime Lab's testing results "may be exculpatory."

Petitioner was charged in a superseding indictment in May 2019. The charges against petitioner in the superseding indictment were identical to those in the original indictment except that Count Two of the superseding indictment alleged that petitioner possessed, with the intent to deliver, methamphetamine rather than heroin.

---

[3] The docket sheet shows that an order of substitution was entered on March 27, 2019.

Petitioner's case proceeded to a one-day jury trial on March 5, 2020, on the four charges in the superseding indictment. Petitioner's defense, as argued during opening statements, was that he was merely a drug user, not a drug dealer. His counsel also asserted, "I'm not going to hide from you the fact that our county is plagued by drugs -- our state is plagued by drugs."

The State presented the testimony of four witnesses, including Officer Tomlin and Carrie Kirkpatrick, the section supervisor of the drug identification section of the Crime Lab. Officer Tomlin testified about his stop and search of the vehicle, describing the items that were seized from petitioner's vehicle, which included scales, hundreds of dollars of counterfeit currency, and several "stamps."[4] Officer Tomlin explained that "[s]cales are commonly used in the distribution of [sic] sale and manufacturing, and so on, of narcotics," and he indicated that narcotics are commonly sold in small amounts. He further testified that, based on his prior experience with counterfeit currency, he identified the currency in petitioner's wallet as counterfeit. He testified, "[I]t is very common in the drug game for people to use counterfeit money and counterfeit narcotics or what they tr[y] to play off as narcotics." Officer Tomlin also asserted that "a stamp is $20 common on the street" and that the possession of several stamps "shows that you['re] possibly selling narcotics." Officer Tomlin noted that there was a passenger in petitioner's vehicle, that petitioner had claimed that the passenger was selling counterfeit drugs, and that the passenger had also been charged with conspiracy. Ms. Kirkpatrick testified that approximately 4/10 of a gram of the substances submitted to the Crime Lab for testing contained methamphetamine. The remainder of the substances submitted did not contain an identifiable controlled substance. Petitioner did not call any witnesses in his case-in-chief.

During closing arguments, the assistant prosecuting attorney repeatedly referenced the "drug problem" in Fayette County, asserting that the "problem is killing our citizens." She said, "[W]e are all fighting together to try to make this situation better . . . . All we can do is take little . . . pieces out of the pie; hopefully one day being able to make sure that that pie is gone forever. . . . We have to take little . . . battles to fight this war . . . ." Petitioner's counsel addressed the same "war," in his closing argument stating, "We're talking less than half of [a Sweet'n-Low pack]; that's the drugs that my regular Al Capone client and his codefendant are going out and selling in this drug war."

Ultimately, the jury found petitioner guilty on all four counts in the superseding indictment. The circuit court entered a conviction order on March 25, 2020, and an amended sentencing order on August 3, 2020, directing that petitioner serve an effective sentence of nine to thirteen years of incarceration in the penitentiary and pay a total fine of $1,000. The circuit court entered an order on July 27, 2021, resentencing petitioner for purposes of appeal.

## II. DISCUSSION

Petitioner appeals his conviction on three grounds. First, he argues that the stop of his vehicle was illegal and that the circuit court erred by failing to exclude the evidence seized during

---

[4] Officer Tomlin explained that a "stamp" is "1/10 gram of a substance" wrapped in paper or plastic packaged for purchase or sale.

the stop. Second, petitioner contends that the circuit court erred by continuing the case into a second term of court. Third, petitioner argues that the circuit court committed plain error by permitting the assistant prosecuting attorney to make prejudicial statements during the State's closing argument. We address each issue in turn.

## A. Legality of the Stop

Petitioner argues that Officer Tomlin did not have a reasonable and articulable suspicion that petitioner was engaging in illegal activity—driving without a valid license—such that it would have been legal for the officer to stop petitioner's vehicle. According to petitioner, the officer "could have easily confirmed or dispelled his hunch by simply using the communication equipment provided in his vehicle [to] ascertain[] [petitioner's] license status prior to" stopping petitioner's vehicle. Petitioner asserts that, because the stop was illegal, the evidence obtained during the stop should have been excluded. We review the circuit court's conclusion that Officer Tomlin had a reasonable and articulable suspicion to stop petitioner's vehicle de novo. Syl. Pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994) ("On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*.").

In West Virginia, a police officer may stop a vehicle, without running afoul of either the state or federal constitutions, if the officer has "an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." *Id.* at 429, 452 S.E.2d at 887, Syl. Pt. 1, in part. This means that the officer must "articulate facts which provide some minimal, objective justification for the stop." *Id.* at 433 n.10, 452 S.E.2d at 891 n.10. This standard is considerably less demanding than that for establishing probable cause. *Id.* at 432, 452 S.E.2d at 890. To establish an articulable reasonable suspicion, "[t]he officer . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989)). In so doing, the officer is permitted to "formulate[] certain common sense conclusions about human behavior." *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). We have held that "[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." *Stuart*, 192 W. Va. at 429, 452 S.E.2d at 887, Syl. Pt. 2. If, under the totality of the circumstances, an officer did not have an articulable reasonable suspicion to stop a vehicle, the stop violates the constitutional right against unreasonable seizures. *See State v. Legg*, 207 W. Va. 686, 536 S.E.2d 110 (2000) ("[S]topping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of [the Fourth Amendment and Article III, section 6 of the West Virginia Constitution.]"). Evidence gathered from such a stop "is obtained in violation of the Fourth Amendment, [and] the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *State v. Flippo*, 212 W. Va. 560, 578 n.20, 575 S.E.2d 170, 188 n.20 (2002) (quoting *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 1165 (1987)); *see Legg*, 207 W. Va. at 693, 536 S.E.2d at 117 (determining that evidence discovered during the search of the defendant's vehicle should have been suppressed because the officers lacked reasonable suspicion to stop the vehicle).

In the present matter, Officer Tomlin articulated facts providing minimal, objective justification for the stop: He recalled from a recent interaction with petitioner that petitioner did not have a valid driver's license, and he had a commonsense belief that, due to the amount of fines and unpaid citations restricting petitioner's driving privileges, petitioner was driving without a valid license on July 6, 2018. There are no facts in the appendix record suggesting that the officer should have assumed that petitioner's driving privileges would have been reinstated prior to stopping petitioner's vehicle. We disagree with petitioner's contention that the officer should have used his vehicle's communication equipment to verify the status of petitioner's driver's license before stopping petitioner. Given that the information already available to the officer provided him with an articulable reasonable suspicion that petitioner was driving illegally, it was unnecessary for the officer to do so. Under the totality of the circumstances in this specific case, we conclude that the circuit court correctly determined that Officer Tomlin had an articulable reasonable suspicion to stop petitioner's vehicle.[5] Accordingly, we conclude that the circuit court did not err in denying petitioner's motion to exclude the evidence collected during the stop.

### B. One-Term Rule

Petitioner argues that the circuit court's grounds for continuing the trial into the May 2019 term—the recent appointment of counsel and the absence of testing results from the Crime Lab— did not constitute good cause. He states that his right to receive a trial within one term of court is a personal right and that he was entitled to exercise that right at his peril. We review the circuit court's decision to continue the case for an abuse of discretion. *See* Syl. Pt. 2, in part, *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981) ("The determination of what is good cause . . . for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may . . . grant a continuance of a trial beyond the term of indictment . . . .").

West Virginia Code § 62-3-1 provides, in relevant part, "When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term." This is known as the one-term rule. *See Shorter*, 170 W. Va. at 252-53, 294 S.E.2d at 55 (referring to West Virginia Code § 62-3-1 as "the one-term rule"). We have held that the rule "provides a personal right to criminal defendants to be tried more expeditiously than the Constitution requires." Syl. Pt. 2, in part, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986) (quoting Syl. Pt. 2, *Pitsenbarger v. Nuzum*, 172 W. Va. 27, 303 S.E.2d 255 (1983)). When a defendant alleges the one-term rule has been violated, "the burden is on the [defendant] to show that the trial was continued without good cause." *Id*. at 147, 342 S.E.2d at 112, Syl. Pt. 2, in part (quoting *Pitsenbarger*, 172 W. Va. 28, 303 S.E.2d 256, Syl. Pt. 2). While West Virginia Code § 62-3-1 "does not specifically provide a remedy for a violation of the one-term rule," we have recognized that Syllabus Point 4 of *Shorter* states what must "be proven in order for a violation of [the statute] to justify a dismissal of an indictment." *Good*, 176 W. Va. at 150, 342 S.E.2d at 115. Syllabus Point 4 of *Shorter* provides:

---

[5] We note that courts in other jurisdictions have determined vehicle stops to be legal under similar facts. *See State v. James*, 399 P.3d 930, 935 (N.M. Ct. App. 2017) (listing cases decided in the Sixth Circuit, Florida, Georgia, Minnesota, and North Dakota).

5

Where the trial court is of the opinion that the state has deliberately or oppressively sought to delay a trial beyond the term of indictment and such delay has resulted in substantial prejudice to the accused, the trial court may, pursuant to *W.Va.Code*, 62-3-1, finding that no good cause was shown to continue the trial, dismiss the indictment with prejudice, and in so doing the trial court should exercise extreme caution and should dismiss an indictment pursuant to *W.Va.Code*, 62-3-1, only in furtherance of the prompt administration of justice.

170 W. Va. at 251, 294 S.E.2d at 53, Syl. Pt. 4.

In this instance, petitioner does not argue that the State deliberately or oppressively sought to delay his trial nor does he argue that the delay resulted in any substantial prejudice to him. Petitioner simply disagrees with the circuit court's conclusion that good cause existed to continue the trial. We agree with the circuit court. As the circuit court found, new counsel had been appointed to represent petitioner shortly before the April 2, 2019, hearing. Our state and federal constitutions recognize a defendant's right to the assistance of counsel in criminal proceedings, and "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14 (1970)). We have held that "a criminal defendant's state and federal constitutional rights are violated if his counsel is denied sufficient time to adequately prepare for trial." *Shorter*, 170 W. Va. at 256, 294 S.E.2d at 58 (citing *State ex rel. Rogers v. Casey*, 166 W. Va. 179, 273 S.E.2d 356 (1980)). Here, the continuance entered by the circuit court was necessary to protect petitioner's right to effective assistance of counsel. Although petitioner argues that the circuit court should have allowed him to proceed to trial with his new counsel "at his peril,"[6] he has failed to show that, in the proceedings below, he intelligently and understandingly waived his right to effective assistance of counsel. *See State ex rel. Fountain v. King*, 149 W. Va. 511, 513, 142 S.E.2d 59, 60 (1965) ("A person accused of a crime may waive his constitutional right to assistance of counsel . . . if such waiver[] [is] made intelligently and understandingly."). Such waiver cannot be presumed. *See id.* ("[W]here the record is silent on the question, it cannot be presumed that the accused waived his right to the assistance of counsel."). In that the record does not demonstrate that petitioner waived his right to effective assistance of counsel, good cause existed to continue the trial into the May 2019 term to allow his counsel adequate time to prepare a defense. Thus, under the specific facts of this case, we determine that the circuit court did not abuse its discretion in ordering the continuance,[7] and dismissal of the indictment would not have been justified under Syllabus Point 4 of *Shorter*.

### C. Prosecutorial Misconduct

---

[6] Petitioner does not argue that his new counsel would have had sufficient time to prepare for a trial in the January 2019 term.

[7] Having determined that the appointment of new counsel constituted good cause for the continuance in this case, we need not consider the circuit court's other ground for good cause—the State's delay in obtaining testing results from the Crime Lab.

Petitioner's final argument is that the assistant prosecuting attorney deliberately made prejudicial statements during her closing argument that warrant reversal of his convictions. He contends that the assistant prosecuting attorney "railed on at length about the horrors of the drug problem," which he asserts put the jury "into a position where they were judging the drug problem in the state, not [petitioner]." He further claims that the proof against him "was very little," and that but for the remarks, the jury might have reached a different verdict. Petitioner concedes, however, that he did not object to the assistant prosecuting attorney's comments during the trial and asks that the Court apply the plain error doctrine.

The plain error doctrine permits reversal of a conviction, despite the failure to timely object, when there is "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995); *see also* Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995) ("A judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice."). "[T]he doctrine of plain error with regard to objectionable closing remarks is sparingly applied" because "[t]here is obviously a considerable tactical advantage to be gained if counsel can remain silent and then press the point on appeal through the plain error doctrine." *State v. Grubbs*, 178 W. Va. 811, 818, 364 S.E.2d 824, 832 (1987).

We conclude that petitioner is not entitled to relief under the plain error doctrine because, assuming without deciding that the circuit court committed error by allowing the assistant prosecuting attorney's comments, those comments did not affect petitioner's substantial rights. First, petitioner's counsel's claim during his opening statement that Fayette County and West Virginia are plagued by drugs offsets—if not outright invites—the assistant prosecuting attorney's comments to the same effect. Second, despite petitioner's assertion that the evidence against him "was very little," our review of the appendix record reveals that substantial evidence existed— particularly, the testimony of Officer Tomlin and Ms. Kirkpatrick—to support the jury's verdict. Petitioner was traveling in a vehicle with scales and several "stamps," worth approximately $20 each and containing either methamphetamine or no identifiable controlled substance, and he had hundreds of dollars of counterfeit currency in his wallet. Officer Tomlin's testimony established that the possession of several stamps, scales, counterfeit currency, and counterfeit drugs indicates drug selling activity. Thus, even absent the assistant prosecuting attorney's remarks in closing arguments, the State had substantial evidence to prove its case and convict petitioner. Accordingly, his substantial rights were unaffected by the assistant prosecuting attorney's comments, and petitioner is not entitled to relief under the plain error doctrine.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 15, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice C. Haley Bunn


Bunn, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.