576 S.E.2d 253

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Charles C. DAMRON, Defendant Below, Appellant.

No. 30530.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 29, 2002.

Decided Dec. 4, 2002.

Jack L. Hickok, Esq., Paul R. Stone, Esq., West Virginia Public Defender Services, Charleston, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Allen H. Loughry, II, Esq., Senior Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Jackson County entered on June 14, 2001. In that order, the appellant and defendant below, Charles Damron, was sentenced to not

less than one year nor more than fifteen years of confinement in the penitentiary for his conviction of burglary and one year of confinement in the Jackson County jail for his conviction of petit larceny. The order further provided that said sentences shall run concurrent to one another, but consecutive to the appellant's term of incarceration for his federal conviction and his term of incarceration for his conviction in Wirt County, West Virginia.

In this appeal, the appellant asserts several assignments of error. He contends the circuit court erred by: (1) not promptly arraigning him and appointing counsel to represent him; (2) holding hearings in his absence and without his written consent; (3) not giving his counsel sufficient time to prepare for trial; (4) not accepting the State's recommendation of concurrent sentences or allowing him to withdraw his plea; and (5) imposing a sentence that was disproportionate to that of his codefendant.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed.

## I.

## FACTS

On June 23, 1999, the appellant and his codefendant, Michael R. Meadows, were indicted on three counts of burglary and three counts of grand larceny.[1] At that time, the appellant was serving a forty-eight-month sentence at the Federal Correctional Institution in Ashland, Kentucky. Accordingly, on July 7, 1999, the State lodged a detainer against the appellant with the warden of the

Federal Correctional Institution pursuant to W.Va.Code § 62–14–1 (1971), also known as the Interstate Agreement on Detainers Act (hereinafter "IADA").

No further action was taken in this case until October 24, 2000. On that date, a hearing was held and the State informed the circuit court that the appellant remained in federal custody. The case was continued. On December 11, 2000, the appellant requested disposition of the pending indictment pursuant to the IADA. On January 12, 2001, the circuit court issued an order tentatively scheduling the appellant's trial for July 31, 2001.

On April 4, 2001, the State moved for a new trial date. The State indicated that it had received the appellant's request for disposition of the indictment on December 13, 2000, and therefore, pursuant to the IADA, the appellant would have to be tried prior to June 11, 2001.[2] By order dated April 20, 2001, the court set a new trial date of May 29, 2001, and appointed an attorney to represent the appellant.

On May 16, 2001, the appellant's counsel filed a motion to dismiss the case because the appellant had not been tried within three terms of court since he was indicted. The circuit court denied the motion. Subsequently, the appellant filed motions to suppress the statement given by his codefendant and to suppress evidence obtained by search warrants. These motions were also denied.

On May 29, 2001, the appellant was arraigned. He entered a plea of not guilty to the charges set forth in the indictment. Trial began that same day. After the opening statements were completed, the appellant,

---

1. The appellant and Meadows allegedly burglarized three dwellings, removing various items including firearms. After entering into a plea agreement with the State, Meadows confessed and stated that the appellant, who was his employer, threatened to fire him if he did not help him steal from houses. Meadows said he entered the homes and removed the property while the appellant stayed in his truck.

2. W.Va.Code § 62–14–1, provides, in pertinent part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.]

**12**

outside the presence of the jury, moved to withdraw his plea of not guilty. Thereafter, pursuant to a plea agreement with the State, the appellant pled guilty to one count of burglary and one count of petit larceny. The State agreed to recommend that any sentence the appellant might receive run concurrent with his Wirt County sentence.

On July 14, 2001, the court sentenced the appellant to not less than one nor more than fifteen years in the penitentiary for his conviction of burglary. The appellant was also sentenced to one year in the county jail for his conviction of petit larceny. The court ordered the sentences to run concurrently with each other, but consecutive to the appellant's term of incarceration for his federal conviction and his term of incarceration for his conviction in Wirt County. This appeal followed.

## II.

### STANDARD OF REVIEW

As set forth above, the appellant asserts several assignments of error. This Court has held that:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

**3.** W.Va.Code § 62–3–21 states:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear accord-

Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). With these standards in mind, we now address the issues in this case.

## III.

### DISCUSSION

The appellant first contends that the circuit court erred by not promptly arraigning him and appointing him counsel. Essentially, the appellant claims that his case should have been dismissed pursuant to W.Va.Code 62–3–21 (1959), generally referred to as the "three-term rule."[3] Although the appellant was indicted in June 1999, no action was taken in his case for eighteen months because he remained in federal custody. When the case was called by the circuit court in October 2000, it was continued because the appellant was still in federal custody. The case was continued on another occasion for the same reason. Finally, the appellant was appointed counsel on April 20, 2001, and he was arraigned on May 29, 2001, immediately before his trial began.

In *State v. Carter*, 204 W.Va. 491, 513 S.E.2d 718 (1998), this Court addressed the issue of whether the three-term rule was violated when defendant Carter was not tried within three terms of court after he was indicted. Like the appellant in the case at bar, Carter was in continuous federal custody until he was secured by the State and brought before the circuit court for arraignment. Defendant Carter was tried during the next term of court following his arraignment. Affording W.Va.Code § 62–3–21 its plain meaning, this Court held in the Syllabus of *Carter*, that:

ing to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace [magistrate], city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

Pursuant to W.Va.Code § 62–3–21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute.

Since Carter had not been arraigned, even though he had been indicted for more than three regular terms of court before he was tried, this Court determined that the three-term rule had not been violated.

Like Carter, the appellant in this case was promptly tried after his arraignment. Thus, the State complied with the three-term rule. In addition, the State fully complied with the IADA. Following the appellant's indictment, the State promptly filed a detainer with the Ashland Federal Correctional Institution where the appellant was incarcerated. As soon as the appellant requested disposition of his indictment pursuant to the IADA, the State took the requisite steps to have the appellant returned to West Virginia. The appellant was then appointed counsel. He was arraigned and his trial began immediately thereafter. Accordingly, we find no merit to the appellant's first assignment of error.

█ The appellant next contends that the circuit court committed reversible error by holding hearings in his absence and without his written consent. The circuit court held hearings on October 24, 2000 and November 16, 2000. At these hearings, the court was informed by the State that the appellant was in federal custody, and the case was continued. At a January 12, 2001 hearing, the court set a trial date of July 31, 2001, after the State indicated that the appellant had requested disposition of his indictment pursuant to the IADA. Four months later, in April 2001, the trial was rescheduled for May 29, 2001, and the appellant was appointed counsel. The appellant was not present at any of these hearings, and thus, he claims that he was denied his constitutional right to be present at all critical stages of the proceedings in his case.

█ In Syllabus Point 6 of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court held that:

The defendant has a right under Article III, Section 14 of the West Virginia Constitution[4] to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless.

(Footnote added). "If an accused demonstrates that his right to confront his accusers was abridged by the State or that he was absent during a critical stage of the trial proceeding, his conviction of a felony will be reversed where a possibility of prejudice appears from the abrogation of the constitutional or statutory right." Syllabus Point 8, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975). However, "[i]n a criminal proceeding, the defendant's absence at a critical stage of such proceeding is not reversible error where no possibility of prejudice to the defendant occurs." Syllabus Point 3, *State ex rel. Redman v. Hedrick,* 185 W.Va. 709, 408 S.E.2d 659 (1991).

Having reviewed the record, we find that the appellant was not prejudiced by his absence at the pre-trial hearings in his case, and therefore, no reversible error was committed. As discussed above, the first two hearings in this case were held only for the purpose of determining whether the appellant was still in federal custody. Although the court set a trial date during the January 12, 2001 hearing, the record establishes that

---

4. Article III, Section 14 of the West Virginia Constitution states:

Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

this action was taken for the sole purpose of having the appellant returned to West Virginia pursuant to his request for a prompt disposition of his indictment under the IADA. Likewise, the appellant's trial was rescheduled during the April 4, 2001 hearing so that he would be tried within one hundred eighty days of the State receiving his request for disposition of his indictment pursuant the IADA.[5] As discussed more fully below, the appellant was given the option to continue his trial, but chose not to do so. Accordingly, we find no merit to this assignment of error.

■ Next, the appellant claims that he was denied due process when the court forced him to trial without giving his counsel an opportunity to prepare. He claims that the court did not consider his rights in setting the trial date and that his counsel did not have sufficient time to prepare his case. The appellant says that as a result, he was forced to enter into a plea agreement with the State.

This Court has held that, "The right guaranteed by State and Federal Constitutions to a person charged with a criminal violation to have effective assistance of counsel, cannot be abrogated by denying counsel, if timely employed, sufficient time to adequately prepare for trial." Syllabus Point 2, *State ex rel. West Virginia–Pittsburgh Coal Co. v. Eno,* 135 W.Va. 473, 63 S.E.2d 845 (1951). However, after reviewing the record in this case, we find that the appellant's counsel had sufficient time to prepare for trial. First, we note that the appellant's trial date was set based on his request for disposition of his indictment pursuant to the IADA. In other words, the case was promptly set for trial to accommodate the appellant, not the State.

Secondly, the record shows that the appellant's counsel had nearly forty days to prepare for the trial. Historically, this Court has only found merit in claims of insufficient time to prepare where counsel had no more than a few days' notice before trial. *See*

*State v. Morris,* 166 W.Va. 811, 277 S.E.2d 638 (1981) (defense counsel was given fifteen minutes in which to consult with the defendant before commencing trial); *State ex rel. Rogers v. Casey,* 166 W.Va. 179, 273 S.E.2d 356 (1980) (defense counsel was given less than twenty-four hours' notice of trial); *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980) (defense counsel had twelve days' notice before trial); *Eno, supra,* (defense counsel had less than twenty-four hours to confer with the defendants). Furthermore, the record shows that the appellant's counsel indicated that he did not want a continuance and that he was "ready to go to trial." Given these circumstances, we do not find that the appellant's trial counsel had insufficient time to prepare his case for trial. In addition, we are unable to find that the appellant was forced to enter into a plea agreement with the State. In that regard, the appellant has not pointed to any evidence to support his claim that he had no choice but to enter into a plea agreement with the State. To the contrary, the record shows that the appellant's plea was entered freely and voluntarily. Thus, we find no merit to this assignment of error.

■ The appellant also claims that the circuit court erred by not accepting the State's recommendation of concurrent sentences or allowing him to withdraw his plea of not guilty. The appellant says that given the "peculiar circumstances" of his case, the court should have either accepted the State's recommendation with regard to sentencing or permitted him to withdraw his plea.

■ In Syllabus Point 2 of *State v. Cabell,* 176 W.Va. 272, 342 S.E.2d 240 (1986), this Court has held that,

A trial court has two options to comply with the mandatory requirements of Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure.[6] It may initially ad-

---

5. *See note 2, supra.*

6. Rule 11(e)(2) of the West Rules of Criminal Procedure states:

 Notice of Such Agreement.—If a plea agreement has been reached by the parties, the court shall, on the record, require the disclo-

sure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A), (C), or (D), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an op-

vise the defendant at the time the guilty plea is taken that as to any recommended sentence made in connection with a plea agreement, if the court does not accept the recommended sentence, the defendant will have no right to withdraw the guilty plea. As a second option, the trial court may conditionally accept the guilty plea pending a presentence report without giving the cautionary warning required by Rule 11(e)(2). However, if it determines at the sentencing hearing not to follow the recommended sentence, it must give the defendant the right to withdraw the guilty plea.

(Footnote added).

The record in this case shows that the circuit court complied with the mandatory requirements of Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure. The following colloquy between the court and the appellant occurred before the appellant entered his guilty plea.

THE COURT: Okay. Now, there's one important thing here in this plea bargain, and that has to do with the—Is this a binding sentencing recommendation?

[PROSECUTING ATTORNEY]: No, your Honor.

[DEFENSE COUNSEL]: No, your Honor.

THE COURT: Okay. Now, by this agreement, which, if you plead guilty here today, you're going to get the benefit of this agreement. Okay?

THE [APPELLANT]: Yes, sir.

THE COURT: These charges are going to be dismissed. The State is required to recommend at sentencing that, if you receive a term of incarceration, it is to run concurrent with the sentence of incarceration imposed on you in Wirt County Circuit Court. All right?

THE [APPELLANT]: Yes sir, your Honor.

THE COURT: Now, here's something very important for you to remember. It is function [sic] of the judge to impose the sentence. The judge receives the recommendation of the lawyers, the prosecuting attorney, your lawyer, and even you, if you wish to make one. But the decision is ultimately the judge's to make. So the judge is free to reject the sentencing recommendation made by the prosecuting attorney and impose—I guess—consecutive sentences. Do you understand that?

THE [APPELLANT]: Yes, sir.

THE COURT: Did you talk about this with your lawyer?

THE [APPELLANT]: Yes, sir, I did.

THE COURT: Okay. If that happens, you won't be able to withdraw your pleas of guilty for that reason.

THE [APPELLANT]: Yes, sir.

THE COURT: Do you understand what I am saying?

THE [APPELLANT]: Yes, sir.

THE COURT: Okay. Can you assure me you've read this plea bargain?

THE [APPELLANT]: Yes, sir; I have.

THE COURT: Okay. It'll be filed.

Given all of the above, we find no merit to this assignment of error.

 Finally, the appellant contends that the sentence imposed upon him was grossly disproportionate to that received by his codefendant, Meadows. After Meadows agreed to testify against the appellant, the State decided not to prosecute him. The appellant claims that the evidence indicated that he and Meadows were equally involved in the crimes. He further claims that Meadows has a more egregious prior record and that he unfairly benefitted from having coun-

portunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.

Rule 11(e)(1)(B) concerns agreements whereby the State "[m]ake[s] a recommendation or agree[s] not to oppose the defendant's request for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court[.]"

sel appointed to represent him early in the proceedings.

In Syllabus Point 2 of *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984), this Court held that:

> Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Having reviewed the record, we do not believe that the appellant and Meadows were similarly situated. Unlike the appellant, Meadows was not serving a federal sentence or facing charges in Wirt County. In addition, Meadows entered into his plea agreement before his case proceeded to trial. Moreover, the evidence suggests that the appellant, who was Meadows' employer, instigated the crimes and threatened to fire Meadows if he did not participate. In sum, the appellant and Meadows were not similarly situated, and therefore, we find no merit to this assignment of error.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Jackson County entered June 14, 2001, is affirmed.

Affirmed.