# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2021 Term

_____

No. 21-0090

_____

**FILED**

**June 3, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## STATE OF WEST VIRGINIA EX REL. HAROLD RADFORD PORTER,
Petitioner

## V.

## HONORABLE PAUL T. FARRELL,
## JUDGE OF THE CIRCUIT COURT OF CABELL COUNTY; AND
## THE STATE OF WEST VIRGINIA,
Respondents

_____

### PETITION FOR WRIT OF PROHIBITION

### WRIT DENIED

_____

Submitted:  April 13, 2021
Filed: June 3, 2021

Richard W. Weston
Weston Robertson
Hurricane, West Virginia
Attorney for the Petitioner

Patrick Morrisey
Attorney General
Scott E. Johnson
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent,
State of West Virginia

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "'The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution[s]. U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14.' Syl. Pt. 1, *State v. Foddrell*, 171 W. Va. 54, 297 S.E.2d 829 (1982)." Syllabus point 3, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020).

2. "It is the three-term rule, W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." Syllabus point 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986).

3. "'"Pursuant to W. Va. Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute." Syllabus, *State v. Carter*, 204 W. Va. 491, 513 S.E.2d 718 (1998).' Syl. Pt. 1, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002)." Syllabus point 4, *State v. Paul C.*, ___ W. Va. ___, 853 S.E.2d 569 (2020).

i

4.  "'Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned[.]' Syl. Pt. 1[, in part], *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972)." Syllabus point 5, in part, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020).

5.  "A person held under an indictment, without a trial, for three full and complete regular terms of the court in which he is held to answer, after the term thereof at which the indictment was found, under circumstances which do not excuse the failure of the state to bring him to trial, by virtue of the exceptions in section 25 of chapter 159 of the Code (sec. 5601) may obtain his discharge from prosecution on the indictment, on a writ of habeas corpus[.]" Syllabus point 1, in part, *Ex parte Anderson*, 81 W. Va. 171, 94 S.E. 31 (1917).

6.  A term of court during which a judicial emergency has been declared in response to the COVID-19 global pandemic and corresponding limits have been imposed upon the ability of courts to hold jury trials and/or conduct nonessential judicial proceedings is not a "regular" term of court as contemplated by the three-term rule set forth in West Virginia Code section 62-3-21 (eff. 1959).

**Jenkins, Chief Justice:**

Harold Radford Porter ("Mr. Porter"), the petitioner herein, requests this Court to issue a writ of prohibition to prevent the Honorable Paul T. Farrell, Judge of the Circuit Court of Cabell County and one of the respondents herein, from enforcing the court's order entered January 26, 2021, in which the circuit court denied Mr. Porter's motion to dismiss. Before the circuit court and again in his request for prohibitory relief from this Court, Mr. Porter contends that the State of West Virginia ("the State"), the other respondent herein, violated his right to a speedy trial by not trying him within three regular terms of court after the return of his indictment as required by West Virginia Code section 62-3-21 (eff. 1959). The State disagrees with Mr. Porter's characterization of the underlying proceedings and asserts that the COVID-19 global pandemic presented extenuating circumstances relieving it of its duty to try Mr. Porter within three terms of court after he was indicted. Upon a review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we find that, as of the date of Mr. Porter's motion to dismiss and the circuit court's ruling thereon, three regular terms of court had not yet passed since Mr. Porter had been indicted, and, thus, there was no violation of the three-term rule in this case. Accordingly, the writ of prohibition requested by Mr. Porter is denied, and his criminal trial is permitted to proceed provided three regular terms of court have not passed since Mr. Porter was indicted on the charges upon which he is to be tried.

1

# I.

## FACTS AND PROCEDURAL HISTORY

To better understand the factual and procedural posture of this case, a brief review of the overarching legal framework is necessary. Mr. Porter seeks a writ of prohibition to prevent the Circuit Court of Cabell County from holding his criminal trial during the January 2021 term of court because he claims that the State has violated the three-term rule set forth in West Virginia Code section 62-3-21 in violation of his constitutional right to a speedy trial. Mr. Porter was indicted on three felony offenses in the Circuit Court of Cabell County; therefore, the pertinent part of West Virginia Code section 62-3-21 pertaining to felony offenses applies to this case and provides as follows:

> Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict[.]

We previously have considered the language of this statute, holding:

> 1. It is the three-term rule, W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution.
>
> 3. Under the three-term rule, W. Va. Code, 62-3-21, it is the duty of the State to provide a trial without unreasonable

2

delay[,] and an accused is not required to demand a prompt trial as a prerequisite to invoking the benefit of this rule.

4. The possible reasons justifying good cause for a continuance under W. Va. Code, 62-3-1, are broader than the causes listed in W. Va. Code, 62-3-21, as valid reasons for not counting a particular term. As a consequence, the causes justifying continuances listed in the three-term rule, W. Va. Code, 62-3-21, may be applied in a one-term rule situation, but *the general good cause standard in W. Va. Code, 62-3-1, may not be applied in a W. Va. Code, 62-3-21 situation*.

Syl. pts. 1, 3, & 4, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986) (emphasis added). Under these holdings, it is apparent that, to excuse a term of court from counting towards the calculation of the three-term rule, the term of court must not be regular, West Virginia Code section 62-3-21, or the reason that a trial was not held during a particular term cannot be for "good cause" but rather must be as a result of the application of one of the specific exceptions set forth in West Virginia Code section 62-3-21. *See* Syl. pt. 4, *Good*, 176 W. Va. 145, 342 S.E.2d 111. In this context, then, the facts giving rise to the instant proceeding are as follows.

### A. Indictment

On October 31, 2019, Mr. Porter was indicted on one count of murder of one gentleman; one count of attempt to commit a felony, *i.e.* first-degree murder of a different gentleman; and one count of being a felon in possession of a firearm by a Cabell County grand jury. The term of court during which Mr. Porter was indicted does not count towards the calculation of the three-term rule. *See* W. Va. Code § 62-3-21 (explaining calculation

of three-term rule as "three regular terms of such court, after the presentment is made or the indictment is found against him").

## B. First Term of Court After Indictment

The next term of court for the Cabell County Circuit Court began on the first Monday of January 2020 (January 6, 2020),[1] which would have been the first term of court following Mr. Porter's indictment for purposes of calculating the three-term rule; Mr. Porter was not tried during this term of court, and no trial was scheduled. During this term of court, the Supreme Court of Appeals issued several administrative orders in response to the COVID-19 global pandemic. First, by administrative order entered March 16, 2020,[2] this Court continued generally all criminal trials until April 10, 2020, except "where a criminal defendant's speedy trial rights may preclude continuation of such trial." This order was followed by another administrative order, entered March 22, 2020,[3] wherein we declared a judicial emergency during which jury trials were stayed until April 10, 2020.

---

[1]*See* W. Va. Trial Court R. 2.06 (providing that terms of court for the Circuit Court of Cabell County begin "on the first Monday in January and May, and the second Tuesday in September"). *See also State v. Carson*, No. 17-0951, 2018 WL 6119790, at *5 (W. Va. Nov. 21, 2018)(memorandum decision) (same).

[2]*See* Supreme Court of Appeals of West Virginia, Administrative Order (Mar. 16, 2020).

[3]*See* Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Judicial Emergency Declared* (Mar. 22, 2020).

On April 3, 2020,[4] the judicial emergency declaration was extended through May 1, 2020, and "[a]ll jury trials [were] stayed during this period of judicial emergency."

## C. Second Term of Court After Indictment

The Circuit Court of Cabell County's next term of court that Mr. Porter claims counts towards the calculation of the three-term rule began on the first Monday of May 2020 (May 4, 2020).[5] Mr. Porter also was not tried during this term of court, nor was a trial scheduled. However, this Court, by order entered April 22, 2020,[6] again extended the declaration of judicial emergency, this time through May 15, 2020, during which time all jury trials were still stayed. By administrative order entered May 6, 2020,[7] court operations were permitted to resume, but jury trials could not "commence [until] on or after June 29, 2020," and were subject to specified pandemic protocols, which varied depending upon the severity of the virus presence in each county.

---

[4]*See* Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Judicial Emergency Declared, Amended Order* (Apr. 3, 2020).

[5]*See supra* note 1.

[6]*See* Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Judicial Emergency Declared, Second Amended Order* (Apr. 22, 2020).

[7]*See* Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Resumption of Operations* (May 6, 2020).

*D. Third Term of Court After Indictment*

The third term of the Circuit Court of Cabell County upon which Mr. Porter relies for calculation of the three-term rule began on the second Tuesday of September 2020 (September 8, 2020).[8] During this term of court, a video status conference hearing was held in the petitioner's case, and his jury trial was scheduled to begin on March 1, 2021; this ruling was memorialized by the circuit court's order entered November 23, 2020. Thereafter, the Circuit Court of Cabell County, as well as the Family Court and the Magistrate Court, was closed from December 21, 2020, through January 3, 2021, due to a resurgence of COVID-19 in Cabell County,[9]

---

[8]*See* note 1, *supra*.

[9]Specifically, our directive in this regard provided that

[t]he Court intends for a uniform, statewide response to the ongoing COVID-19 pandemic; however, it also recognizes that diverse geographic regions of the state have been, and will continue to be, impacted differently. *When a localized outbreak occurs, it may be appropriate for the Chief Circuit Judge* or Chief Family Court Judge *to issue temporary judicial emergency orders in consultation with their local health departments and with the Administrative Office regarding county-specific issues.*

. . . .

The School Alert System map issued by the West Virginia Department of Education and/or the County Alert System map issue by the West Virginia Department of Health and Human Resources are factors that may be considered by the Chief Circuit Judge and Chief Family Court Judge in determining appropriate steps in consultation with county officials and local health officials. *An increased color status represents a heightened risk of transmission in a county and*

which closure[10] was authorized by this Court's May 6, 2020, *Resumption of Operations* administrative order,[11] as amended by administrative order entered October 6, 2020.[12]

### E. Fourth Term of Court After Indictment

The next, or fourth as counted by Mr. Porter, term of court began on the first Monday of January 2021 (January 4, 2021). On January 6, 2021, Mr. Porter filed his motion to dismiss based upon the State's alleged failure to provide him a speedy trial. The circuit court denied Mr. Porter's motion by order entered January 26, 2021, succinctly ruling that it was denying his motion to dismiss "due to extraordinary COVID-19 conditions." From this ruling, Mr. Porter files the instant petition for writ of prohibition.

---

> *may*, but is not required to, *warrant a local judicial emergency action*.

Administrative Office, Supreme Court of Appeals of West Virginia, *Revised COVID-19 Resumption of Operations Protocols*, at 2-3 (Oct. 6, 2020) (adopted and incorporated by reference into Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Amendment No. 1 to the May 6, 2020 Resumption of Operations Order* (Oct. 6, 2020)) (emphasis added).

[10]*See* Circuit Court of Cabell County, West Virginia, Administrative Order, No. 20-ADMO-1, *In Re: Emergency Closure of Cabell County Court System* (Dec. 18, 2020).

[11]*See supra* note 7.

[12]*See* Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Amendment No. 1 to the May 6, 2020 Resumption of Operations Order* (Oct. 6, 2020).

## II.

## STANDARD FOR ISSUANCE OF WRIT

The instant matter is before the Court as an original jurisdiction proceeding upon Mr. Porter's assertion of his right to a speedy trial by way of a petition for writ of prohibition. We previously have recognized that prohibition is a proper method by which an accused individual may challenge a State's alleged failure to try him/her within three terms after he/she has been indicted. *See State ex rel. Farley v. Kramer*, 153 W. Va. 159, 168, 169 S.E.2d 106, 112 (1969). However, whether a writ of prohibition should issue in a particular case, is guided by the following standard:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). *See also*

Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A

writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It

8

will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers."). Where, as here, we also are asked to apply a statute to the facts of a particular case, we are confronted with a question of law, to which we apply a plenary review. *See* Syl. pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue . . . is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Mindful of these standards, we proceed to consider the parties' arguments as to whether the writ of prohibition Mr. Porter requests should issue in this case.

## III.

## DISCUSSION

In this original jurisdiction proceeding, Mr. Porter seeks prohibitory relief because, he claims, the State failed to try him within three terms of court after he was indicted on the underlying criminal offenses. The State rejects Mr. Porter's contentions and claims that three terms of court had not passed after Mr. Porter's indictment because the occurrence of the COVID-19 global pandemic satisfied the "witness sickness" excuse provided by West Virginia Code section 62-3-21. *See* W. Va. Code § 62-3-21 (excusing term of court from operation of three-term rule where "the failure to try [the accused] was caused . . . by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident").

9

A criminal defendant's right to a speedy trial is guaranteed by both the United States and West Virginia Constitutions. "'The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution[s]. U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14.' Syl. Pt. 1, *State v. Foddrell*, 171 W. Va. 54, 297 S.E.2d 829 (1982)." Syl. pt. 3, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020). *See also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ."); W. Va. Const. art. III, § 14 ("Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay. . . ."). Furthermore, the three-term rule, which Mr. Porter claims the State has violated in this case, is the Legislature's embodiment of a criminal defendant's right to be tried without undue delay: "It is the three-term rule, W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." Syl. pt. 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986).

The three-term rule is set forth in West Virginia Code section 62-3-21 (eff. 1959), and provides, in pertinent part:

> Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the

State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict[.]

This statute generally requires the State to try a criminal defendant within three regular terms of court after the return of the indictment upon which the defendant is to be tried unless certain statutory exceptions operate to excuse the State from this obligation. In other words,

"'[p]ursuant to W. Va. Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute.' Syllabus, *State v. Carter*, 204 W. Va. 491, 513 S.E.2d 718 (1998)." Syl. Pt. 1, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002).

Syl. pt. 4, *State v. Paul C.*, ___ W. Va. ___, 853 S.E.2d 569 (2020). *Accord* Syl. pt. 4, *State v. Lacy*, 160 W. Va. 96, 232 S.E.2d 519 (1977) ("'One charged with a crime is entitled to be forever discharged from prosecution upon such charge, if he is not tried within three regular terms of court after the term in which the indictment is found against him, unless the failure to try is excused for one of the reasons contained in Code, 62-3-21, as amended.' Syllabus, point 1, *State ex rel. Parsons v. Cuppett*, 155 W. Va. 469, 184 S.E.2d 616 (1971)."). The term of court during which the indictment was returned does not count

11

towards this three-term calculation,[13] and neither does any term of court that is excused

pursuant to the exceptions to the three-term rule recognized by the express statutory

language of section 62-3-21.[14] Thus, the question we must resolve is whether three regular

---

[13]*See* Syl. pt. 4, *State v. Carrico*, 189 W. Va. 40, 427 S.E.2d 474 (1993) ("'The three regular terms of a court essential to the right of a defendant to be discharged from further prosecution, pursuant to provisions of the *Code*, 62-3-21, as amended, are regular terms occuring [*sic*] subsequent to the ending of the term at which the indictment against him is found. The term at which the indictment is returned is not to be counted in favor of the discharge of a defendant.' Syl. pt. 1, *State ex rel. Smith v. De Berry*, 146 W. Va. 534, 120 S.E.2d 504 (1961)[, *overruled on other grounds by State ex rel. Sutton v. Keadle*, 176 W. Va. 138, 342 S.E.2d 103 (1985)]."). *See also* Syl. pt. 5, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (2020) ("'Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned. The term at which the indictment was returned can not [*sic*] be counted as one of the three terms.' Syl. Pt. 1, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).").

[14]*See* Syl. pt. 1, *State ex rel. Webb v. Wilson*, 182 W. Va. 538, 390 S.E.2d 9 (1990) ("*W. Va. Code*, 62-3-21 [1959] limits the state to three unexcused regular terms of court, calculated in accordance with *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972), in which to bring an accused to trial on the charges contained in an indictment. Once three unexcused regular terms of court have lapsed, and the state has failed to bring the accused to trial on the charges contained in the indictment, the state may not further proceed on the charges contained in the indictment, for, under the plain meaning of the statute, the accused must be 'forever discharged' and the indictment dismissed."). *See also* Syl. pt. 4, *State v. Paul C.*, ___ W. Va. ___, 853 S.E.2d 569 (2020) ("''Pursuant to W. Va. Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute." Syllabus, *State v. Carter*, 204 W. Va. 491, 513 S.E.2d 718 (1998).' Syl. Pt. 1, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002)."); Syl. pt. 4, *State v. Lacy*, 160 W. Va. 96, 232 S.E.2d 519 (1977) ("'One charged with a crime is entitled to be forever discharged from prosecution upon such charge, if he is not tried within three regular terms of court after the term in which the indictment is found against him, unless the failure to try is excused for one of the reasons contained in Code, 62-3-21, as amended.' Syllabus, point 1, *State ex rel. Parsons v. Cuppett*, 155 W. Va. 469, 184 S.E.2d 616 (1971).").

12

terms of court, which have not been excused from calculation of the three-term rule, have passed after the term in which Mr. Porter's indictment was returned such that the State has violated Mr. Porter's constitutional right to a speedy trial.

Insofar as the resolution of this query requires us to interpret and apply the governing statutory language, we must first discern the Legislature's intent in enacting West Virginia Code section 62-3-21. *See* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). Where the language of a statute is plain, we apply the legislative provision without further construction. *See* Syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). However, where the statutory language is not plain, we must construe the verbiage before it can be applied. *See* Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied."). Moreover, where no definition is supplied for the words employed by the Legislature, they must be given their common, ordinary meaning. *See* Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning.").

In response to Mr. Porter's assertions in this case, the State claims that certain terms of court were excepted from operation of the three-term rule because of the application of the statutory exception pertaining to a witness being kept away due to sickness as a result of the closure of courts during these terms amidst the COVID-19 global pandemic. *See* W. Va. Code § 62-3-21 (excusing term of court from operation of three-term rule where "the failure to try [the accused] was caused . . . by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident"). However, the State simultaneously concedes that it never scheduled a trial during these terms, nor did it identify any witnesses whose testimony it intended to present at trial or disclose to Mr. Porter a list of these witnesses.

We would be remiss if we did not recognize the impact that the judicial response to the COVID-19 pandemic had upon the State's ability to try Mr. Porter within the requisite three terms of court. Although the Legislature amended West Virginia Code section 62-3-21 in 1923, shortly after the worldwide Spanish influenza epidemic, none of the enumerated exceptions to the three-term rule anticipate the closure of courts in response to such a significant public health crisis. *See generally* W. Va. Code § 62-3-21. *See also* *State ex rel. Holstein v. Casey*, 164 W. Va. 460, 469, 265 S.E.2d 530, 535 (1980) (Miller, J., dissenting) ("W. Va. Code, 62-3-21, specifies only five grounds which will toll the three-term rule: (1) defendant's insanity; (2) State's witnesses 'being enticed or kept away' or 'prevented from attending by sickness or inevitable accident'; (3) a continuance obtained by the defendant; (4) the defendant's escape from jail or failure to appear according to his

14

bond; [or] (5) the inability of the jury to agree on their verdict."), *overruled on other grounds by State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981).

Be that as it may, the prefatory statutory language, itself, requires that the terms of court to be counted towards the calculation of the three-term rule be "regular":

> Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three *regular* terms of such court, after the presentment is made or the indictment is found against him, without a trial[.]

W. Va. Code § 62-3-21 (emphasis added). And this Court, also, has held that the operative terms of court are those that are "regular":

> "Under the provisions of Code, 62-3-21, as amended, the three unexcused *regular* terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned[.]" Syl. Pt. 1[, in part], *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).

Syl. pt. 5, in part, *State v. Holden*, 243 W. Va. 275, 843 S.E.2d 527 (emphasis added).

*Accord* Syl. pt. 4, *State v. Carrico*, 189 W. Va. 40, 427 S.E.2d 474 (1993) ("'The three *regular* terms of a court essential to the right of a defendant to be discharged from further prosecution, pursuant to provisions of the *Code*, 62-3-21, as amended, are *regular* terms occuring [*sic*] subsequent to the ending of the term at which the indictment against him is found. The term at which the indictment is returned is not to be counted in favor of the discharge of a defendant.' Syl. pt. 1, *State ex rel. Smith v. De Berry*, 146 W. Va. 534, 120

15

S.E.2d 504 (1961)[, *overruled on other grounds by State ex rel. Sutton v. Keadle*, 176 W. Va. 138, 342 S.E.2d 103 (1985)]." (emphasis added)).

Although the Legislature has not precisely defined this word, we long have held "regular" in this context to mean "full" and "complete":

> A person held under an indictment, without a trial, for three *full and complete regular terms of the court* in which he is held to answer, after the term thereof at which the indictment was found, under circumstances which do not excuse the failure of the state to bring him to trial, by virtue of the exceptions in section 25 of chapter 159 of the Code (sec. 5601) may obtain his discharge from prosecution on the indictment, on a writ of habeas corpus[.]

Syl. pt. 1, in part, *Ex parte Anderson*, 81 W. Va. 171, 94 S.E. 31 (1917) (emphasis added). *Accord State ex rel. Shorter v. Hey*, 170 W. Va. at 255, 294 S.E.2d at 58 ("[A]t least three *full terms of court* beyond the term of indictment must pass before, under *W. Va. Code*, 62-3-21, the constitutional right to a speedy trial is denied." (emphasis added; citations omitted)). *See also Good*, 176 W. Va. at 151, 342 S.E.2d at 116 ("[W]e have recognized under W. Va. Code, 62-3-21, that the term of the indictment is not counted, so that it is possible for almost four *full terms of court* to pass before the State would be required to bring a defendant to trial." (emphasis added; footnote omitted)); *State v. Lambert*, 175 W. Va. 141, 144-45, 331 S.E.2d 873, 876 (1985) (per curiam) ("Even assuming, *arguendo,* that the three-term period commenced running from the time of the first indictment, only two *full terms* which counted against the State passed before trial. Since only two terms passed, he was not discharged from prosecution under the 'Three

Term Rule.'" (emphasis added)). Moreover, in so ruling, this Court clarified that, for calculation of the three-term rule, "[c]omplete terms, not merely partial ones, are contemplated." *Anderson*, 81 W. Va. at ___, 94 S.E. at 33 (citation omitted).

This construction also is in keeping with the common, ordinary meaning of "regular" as being "customary," "usual," "normal," or "complete." *See, e.g.*, *Regular*, American Heritage Dictionary of the English Language (5th ed. 2016) (defining "regular" as "[c]ustomary, usual, or normal[;] . . . [c]omplete"); *Regular*, Cambridge Dictionary (2021) (reporting definition of "regular" as "usual or ordinary[;] . . . complete"); *Regular*, Collins English Dictionary – Complete and Unabridged (12th ed. 2014) (construing "regular" to mean "normal, customary, or usual"); *Regular*, Merriam-Webster Dictionary (2021) (interpreting "regular" as "normal, standard[;] . . . complete"); *Regular*, Random House Kernerman Webster's College Dictionary (2010) (stating meaning of "regular" to be "usual; normal; customary"). *Cf.* Syl. pt. 3, *State v. Foster*, 14 N.D. 561, ___, 105 N.W. 938, 938 (1905) (observing that "[a] regular term of court, . . . which, in the absence of good cause shown, requires the dismissal of a prosecution when an information is not filed at the next regular term after the defendant's commitment, means a jury term, as distinguished from a statutory term without a jury"); *McLaurin v. Kelly*, 40 S.C. 486, ___, 19 S.E. 143, 144-45 (1894) (concluding that "regular terms of the court of common pleas" are those in which a "circuit judge is . . . allowed to hear trials by jury . . . inasmuch as trials by juries are a component part of a regular term of the court of common pleas").

Considering these constructions of the word "regular," it is clear that a term of court during which a judicial emergency is declared and jury trials are curtailed for a period of time, as with our response to the COVID-19 global pandemic public health crisis, does not satisfy these definitions of a "regular" term of court insofar as such a term is not a full and complete term but, rather, only a partial term during which judicial proceedings could be held.[15]  *See generally Anderson*, 81 W. Va. 171, 94 S.E. 31.  This construction

[15]We are not the only tribunal that has been faced with the maelstrom caused by the convergence of court closures necessitated by the COVID-19 global pandemic and the perpetually ticking hands of time that safeguard a criminal defendant's right to a speedy trial.  As the Supreme Court of Colorado lamented,

> COVID-19, the highly contagious and potentially deadly illness caused by the novel coronavirus, has triggered a global pandemic the likes of which we haven't experienced in over a century.  Unsurprisingly, it has wreaked havoc on just about every aspect of our lives.  The criminal justice system has not been spared from the ravages of this malady.  In particular, trial courts have struggled with effectuating a defendant's statutory right to speedy trial amid this unparalleled public health crisis.
>
> . . . .
>
> Seemingly overnight, we f[ou]nd ourselves living in an almost unrecognizable new world—one even Nostradamus couldn't have foreseen.  The COVID-19 pandemic has turned our lives upside down and made it virtually impossible to hold jury trials in criminal cases.  Yet, defendants continue to have a statutory right to speedy trial . . . . This has unfairly placed our trial courts in a catch-22.

*People of the State of Colorado v. Lucy*, 2020 CO 68, __, __, 467 P.3d 332, 334, 339 (2020).  Other jurisdictions, too, have found that court closures and the cessation of judicial proceedings in response to the COVID-19 global pandemic excuse the State from strict compliance with time limits established to protect a criminal defendant's right to a speedy trial.  *See, e.g., In Re Approval of the Judicial Emergency Declared in the S. Dist. of*

18

*California*, 955 F.3d 1135, 1140 (9th Cir. 2020) (report) (recognizing that "the emergency situation [due to the COVID-19 pandemic] in the Southern District of California has required the District and the Judicial Council of the Ninth Circuit to invoke the provisions of 18 U.S.C. § 3174(c) to extend the STA [Speedy Trial Act] time periods for bringing defendants to trials"); *United States v. Pair*, No. 3:20cr3, 2021 WL 772235, at *11 (E.D. Va. Feb. 26, 2021) (memorandum opinion) (acknowledging that defendant "has faced an uncommonly long delay, but one that is justified by the exigencies of the COVID-19 pandemic . . . , and there has been no prejudice to his defense. Under these circumstances and on this record, [defendant's] Sixth Amendment right to a speedy trial has not been violated."); *United States v. Holder*, No. 18-cr-00381-CMA-GPG-1, 2021 WL 119571, at *2, *3 (D. Colo. Jan. 13, 2021) (order) (explaining that, "[i]ndependent of [defendant's] motions, the delay [in trying him] has also been caused by the COVID-19 pandemic. This global pandemic has affected state and federal court systems across the United States. Implementing safeguards to assuage the risks of COVID-19 has interrupted ordinary court operations in this District," and determining that such delay is "attributable to a nationwide pandemic outside of the control of the parties or this Court," thus finding no violation of defendant's right to speedy trial); *United States v. Bain*, No. 19-20227-CR-GAYLES/OTAZO-REYES, 2020 WL 8299754, at *2 (S.D. Fla. Oct. 28, 2020) (report and recommendation) (rejecting defendant's claim that his speedy trial rights had been violated where delay was attributable, in part, to issuance of "Administrative Orders postponing jury trials due to the COVID-19 Pandemic"); *United States v. Morgan*, 493 F. Supp. 3d 171, 190, 219 (W.D. N.Y. 2020) (decision and order) (commenting that "the COVID-19 pandemic upended all aspects of life" and concluding that ensuing delay in trying defendant was "necessary due to the COVID-19 pandemic" and did not constitute speedy trial violation); *United States v. Reese*, 482 F. Supp. 3d 816 (D. Minn. 2020) (order) (concluding that unique circumstances presented by COVID-19 public health crisis excused government's failure to try defendant in accordance with Speedy Trial Act); *United States v. Briggs*, 471 F. Supp. 3d 634, 637 (E.D. Pa. 2020) (memorandum) (excusing government's compliance with temporal requirements of Speedy Trial Act based on "implement[ation] . . . [of] certain adjustments to Court operations due to the exigent circumstances created by the ongoing COVID-19 pandemic and in the interest of public health and safety" (citation omitted)); *United States v. Kane*, No. MJ20-5054-BHS-TLF, 2020 WL 6434792, at *4 (W.D. Wash. June 9, 2020) (report and recommendation) (reasoning that "the national emergency precipitated by the COVID-19 pandemic constituted 'extraordinary circumstances'" to excuse government's compliance with "the Speedy Trial Act" (citations omitted)); *United States v. Smith*, 460 F. Supp. 3d 981 (E.D. Cal. 2020) (order) (ruling that inability of court to hold jury trials during COVID-19 pandemic excused government's failure to try defendant within requisite time and that such failure did not constitute violation of defendant's right to speedy trial); *State of Delaware v. Duonnolo*, Nos. 1906013925 & 1906013859, 2020 WL 2467077, at *2 (Del. Super. Ct. May 13, 2020) (unpublished order) (stating delay occasioned "by the outbreak of the coronavirus, which created a worldwide pandemic and has brought the entire country to a

further is in keeping with the express statutory language of West Virginia Code section 62-3-21, itself, which contemplates that the terms of court to be counted towards the calculation of the three-term rule be full and complete, and not partial, terms of court insofar as section 62-3-21 exempts the term of the defendant's indictment, which inevitably

virtual standstill" excused state's failure to provide defendant with speedy trial, and justifying further that defendant's "trial has been put on hold for a couple of months while the government acts to ensure the public's health. That is a completely reasonable response to a world-wide pandemic that has killed hundreds of thousands and is transmitted through human contact."); *Smith v. State of Florida*, 46 Fla. L. Weekly D43, ___, 310 So. 3d 1101, 1104 (Fla. Dist. Ct. App. 2020) (finding that Florida Supreme Court's orders in response to COVID-19 pandemic "suspend[ed] trials and suspend[ed] all speedy trial time limits"); *Commonwealth of Massachusetts v. Lougee*, 485 Mass. 70, 71, 147 N.E.3d 464, 468 (2020) (denying defendants relief upon claim of speedy trial violation where State's failure to try defendants within required period of time was caused by court's "response to the community spread of the COVID-19 pandemic in the Commonwealth . . . [and] issu[anc]e [of] a series of emergency orders designed to protect the public health and reduce the spread of disease by minimizing the need for in-person proceedings at court houses"); *People of the State of New York v. Pervez*, 134 N.Y.S.3d 169, 175, 69 Misc. 3d 1006, 1013 (N.Y. Sup. Ct. 2020) (observing that, "[a]side from defendant's efforts in thwarting his extradition, the global pandemic caused by Covid-19 has further complicated matters and provides further good cause for any delay in returning defendant to the Court's jurisdiction"); *Commonwealth of Virginia v. Vila*, No. CR FE-2019-0000939, 104 Va. Cir. 389, ___, 2020 WL 8772404, at *9 (Va. Cir. Ct. Mar. 30, 2020) (order) (concluding defendant's right to speedy trial was not violated by court's inability to hold jury trials as a result of COVID-19 because "the coronavirus pandemic is a unique and catastrophic crisis of a dimension and consequence that has few rivals in American history"). *But see, e.g.*, *Ex parte Sheffield*, 611 S.W.3d 630, 635 (Tex. Ct. App. 2020) (noting that "[t]he declaration of a state of disaster [due to the COVID-19 pandemic] may impact the judiciary and its disposition of cases pending before it. Nonetheless, '[t]he Constitution is not suspended when the government declares' such a disaster. *In re Abbott*, 601 S.W.3d 802, 805 (Tex. 2020). Nor has anyone cited us (or have we discovered) authority permitting the 'Office of Court Administration,' the '[Presiding Judge] of the Texas Court of Criminal Appeals,' or the 'Chief Justice of the Texas Supreme Court' to unilaterally suspend the Constitution. . . . The right to a speedy trial being a part of both the United States and Texas Constitutions, it too falls within *Abbott*'s edict. It remains alive and cannot be suspended. . . . [A] state of disaster alone cannot indefinitely pretermit enjoyment of the right.").

would be a partial term of court, from the calculation of the operative three terms of court. *See* W. Va. Code § 62-3-21 (requiring discharge of defendant "if there be three regular terms of such court, *after the presentment is made or the indictment is found against him*, without a trial" unless State's failure to try defendant is excused by operation of enumerated statutory exception(s) (emphasis added)). In recognition of the express statutory language of section 62-3-21, our prior holdings, and the authorities cited, we therefore hold that a term of court during which a judicial emergency has been declared in response to the COVID-19 global pandemic and corresponding limits have been imposed upon the ability of courts to hold jury trials and/or conduct nonessential judicial proceedings is not a "regular" term of court as contemplated by the three-term rule set forth in West Virginia Code section 62-3-21 (eff. 1959).

It goes without saying that the terms of court identified by Mr. Porter in support of his three-term violation argument were, in light of this Court's response to the COVID-19 pandemic, anything but "regular" terms of court. During the first such term, which began in January 2020, this Court issued no less than four separate orders which declared a judicial emergency, stayed criminal trials, and barred all but the most essential court functions from proceeding.[16] As such, the January 2020 term was not a full and complete term of court, and it does not count towards the calculation of the three-term rule.

---

[16]*See* notes 2, 3, 4, and 6, *supra*.

The next such term of court, commencing in May 2020, continued to be impacted by these restrictions, which were not lifted to permit the holding of jury trials until late June 2020.[17]  Therefore, again, the May 2020 term of court was a partial, not a full and complete, term of court during which jury trials were not permitted until the latter portion of the term.

While court functions approached normalcy during the third term identified by Mr. Porter as counting towards the calculation of the three-term rule in his case, which began in September 2020, we continued to vest circuit courts with the authority to halt all proceedings if their counties experienced a resurgence of COVID-19 cases in an attempt to protect the litigants, the bench, the bar, and the public from a further spread of this "scourge of the earth."[18]  *Fay v. Merrill*, No. HHDCV206130532S, 70 Conn. L. Rptr. 121, ___, 2020 WL 4815881, at *2 (Conn. Super. Ct. July 22, 2020).  *Accord id.* (describing "COVID-19 . . . [a]s a sickness of a lethality and ubiquity unknown for a hundred years").  Thus, when the number of COVID-19 cases rose dramatically in December 2020, the circuit court followed this Court's prescribed protocols, declared a judicial emergency in that circuit, and curtailed all but the most essential judicial proceedings for a period of two weeks.[19]  Again, then, the cessation of jury trials during this term of court in response to

___

[17]*See supra* note 7.

[18]*See* notes 9 and 12, *supra*.

[19]*See supra* note 10.

the COVID-19 global pandemic also caused this term to fall short of being a full and complete term of court. Hence, under these unique circumstances, it can hardly be said that any of the terms of court identified by Mr. Porter were regular because each such term was interrupted by the declaration or continuation of a state of judicial emergency which was accompanied by the closure of courts and cancellation of nonessential judicial proceedings, including jury trials. Therefore, upon this record, we conclude that the State has not violated Mr. Porter's right to a speedy trial because three regular terms of court since his indictment have not yet passed,[20] and the circuit court did not err by denying Mr. Porter's motion to dismiss. Accordingly, we deny the prohibitory relief requested by Mr. Porter in the case *sub judice*.

---

[20]Moreover, until the proceedings underlying and resulting in the instant petition for writ of prohibition, Mr. Porter was scheduled to be tried during the January 2021 term of court, and, thus, this term, also, does not count towards the calculation of the three-term rule. *See* W. Va. Code § 62-3-21 (eff. 1959) (excepting from operation of three-term rule a term in which a trial is not had because of "a continuance granted on the motion of the accused"); Syl. pt. 5, *State v. Paul C.*, ___ W. Va. ___, 853 S.E.2d 569 (""Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended." Syl. pt. 2, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).' Syl. Pt. 3, *State v. Fender*, 165 W. Va. 440, 268 S.E.2d 120 (1980)."). *See also* Syl. pt. 4, *State v. Loveless*, 142 W. Va. 809, 98 S.E.2d 773 (1957) ("In determining whether a defendant in a criminal proceeding is entitled to be discharged from further prosecution on an indictment for the reason that he has not been accorded a speedy trial, within the meaning of Code, 62-3-21, a regular term of court occurring during the pendency of a writ of error granted defendant should not be counted.").

**IV.**

**CONCLUSION**

For the foregoing reasons, we find that Mr. Porter has not demonstrated that he is entitled to a writ of prohibition in this case because three regular terms of court have not passed since the underlying indictment was returned against him, and, thus, his right to a speedy trial has not been violated. Therefore, the Circuit Court of Cabell County is not prohibited from enforcing its January 26, 2021 order, which denied Mr. Porter's motion to dismiss.

Writ Denied.